# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS LEE BLAND, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-15-07-SPS |

## OPINION AND ORDER

The claimant Thomas Lee Bland requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 6, 1966, and was forty-seven years old at the time of the administrative hearing (Tr. 32, 124, 131). He has a high school equivalent education, and has worked as a punch press operator, stocker/storekeeper, retail cashier, drill press operator, and general production inspector (Tr. 48-50). The claimant alleges he has been unable to work since August 2, 2010, due to arthritis in his back (Tr. 158).

## Procedural History

On March 19, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and he applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on March 29, 2012. His applications were denied. ALJ Harold D. Davis conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 14, 2013 (Tr. 15-23). The Appeals Council denied review, so the ALJ's opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). The ALJ concluded that although the claimant could not return to his past relevant work, he was

nevertheless not disabled because there was other work he could perform in the national and regional economies, *i. e.*, small production machine operator and small product assembler (Tr. 22).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly assess his credibility, (ii) consider the cumulative effects of his obesity at step four, and (iii) provide a narrative discussion describing how the evidence supported his RFC. The Court agrees that the ALJ failed to properly assess the claimant's obesity at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the thoracic and lumbar spine, degenerative joint disease, hypertension, and obesity (Tr. 17). His weight ranged from 321 pounds to 386 pounds, and he testified at the administrative hearing that he gained 120 pounds since 2010 (Tr. 45, 235, 285). The relevant medical evidence reveals that the claimant presented to Dr. Craig Cooper on June 8, 2010, and reported mid-back soreness and recent weight gain (Tr. 203). X-rays of the claimant's spine showed increased curvature (which Dr. Cooper attributed to his weight) and arthritic changes (Tr. 203-04). Dr. Cooper noted the claimant could walk and that he had "pretty good range of motion," stating forward flexion was the most uncomfortable, but that he also had some discomfort with rotation (Tr. 203). Dr. Cooper assessed the claimant with hypertension, thoracolumbar pain, degenerative disc disease, and osteoarthritis, and counseled him on the importance of losing weight (Tr. 203). Thereafter, there is no evidence of any medical treatment through September 2012.

On October 3, 2012, the claimant established care with Dr. Carlos Acosta and reported hypertension, joint pain, heart burn, and back issues (Tr. 275-77). On examination, Dr. Costa found the claimant had a normal gait, no swelling in his extremities, and a normal back inspection, but that he had crepitus and some bony enlargement in his knees (Tr. 276). Dr. Acosta assessed the claimant with, *inter alia,* significantly uncontrolled hypertension, lower leg joint pain (suspect underlying osteoarthritis exacerbated by morbid obesity), back pain, and obesity, prescribed medications, and recommended exercise and weight loss (Tr. 275-77). The claimant returned to Dr. Acosta's clinic for lab work on December 12, 2012, but there are no other treatment notes from Dr. Acosta in the record (Tr. 281-83).

On February 8, 2013, the claimant established care with Dr. Gerald Flatt and reported moderate right shoulder pain and stiffness (Tr. 289). Dr. Flatt noted the claimant looked tired and seemed to be in moderate pain (Tr. 290). He found the claimant had decreased range of motion with pain in his right shoulder, however, a right shoulder x-ray was normal and his gait was steady (Tr. 290). Dr. Flatt assessed the claimant with, *inter alia,* shoulder pain, morbid obesity, malaise and fatigue, tendonitis, and a body mass index of 50.0-59.9, prescribed medications, and administered an anti-inflammatory injection (Tr. 290). The claimant returned to Dr. Flatt on April 2, 2013 and reported moderate, intermittent upper back pain, and moderate, but progressive, knee pain (Tr. 285). X-rays of the claimant's back and knees were normal (Tr. 286-87). On examination, Dr. Flatt found the claimant had normal range of motion and full strength in all major muscle groups, but that he had pain with range of motion in his knees and

joints, that his thoracic spine was tender, and his gait was slow and limping (Tr. 286). Dr. Flatt prescribed medication and recommended exercise and weight loss (Tr. 287). There are no other treatment notes from Dr. Flatt in the record.

Dr. Konstantin Berestnev conducted a consultative physical examination of the claimant on May 8, 2012 (Tr. 213-21). The claimant weighed 364 pounds at this time (Tr. 215). Dr. Berestnev found the claimant was within normal limits on every aspect of his exam (Tr. 217-18). He diagnosed the claimant with back pain, degenerative joint disease of the thoracic and lumbar spine, morbid obesity, and uncontrolled hypertension (Tr. 220). Dr. Berestnev concluded that the claimant had no impairments in his ability to walk, stand, sit, lift, carry, handle, or finger; rather, he stated the claimant was deconditioned, and needed physical therapy and conditioning (Tr. 220).

On May 9, 2012, a state reviewing physician found the claimant could perform the full range of light work (Tr. 224-31).

At the administrative hearing, the claimant testified he weighed 386 pounds and that his doctors told him to lose weight (Tr. 37). As to his pain, he stated he had pain in his neck, shoulders, elbows, hands, wrists, back, hips, knees and joints (Tr. 37). He testified that the only medication he was taking for pain was an anti-inflammatory, but that he did have one steroid injection that "helped quite a bit" (Tr. 38, 44-45). He testified his shoulder and back pain were exacerbated by lifting and that he experienced a slight increase in pain with his weight gain (Tr. 43-44). He further testified a typical day includes waking up at noon, watching television, and resting for pain relief (Tr. 39). He stated that he rarely leaves the house, goes to the grocery store once per month,

occasionally visits relatives, and that he and his wife do not do anything socially because of lack of funds (Tr. 39). As to specific limitations, the claimant testified he could walk for 30 to 45 minutes before experiencing pain (which he quantified as a one-half mile) and needing to rest for 30 to 45 minutes, could lift 20 pounds, and could stand for 20-45 minutes (Tr. 41-42, 44). He further testified that he does not do housework because sweeping, mopping, vacuuming, and moving furniture cause him pain (Tr. 41, 46- 47).

Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* Soc. Sec. Rul. 02-1p, 2002 WL 34686281at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*

The ALJ found at step two that the claimant's obesity was a severe impairment, but did not consider its effects on his other impairments or his ability to perform work at step four. At step four, the ALJ summarized the claimant's testimony and the evidence in

the record. Although he gave the state agency physician opinion substantial weight, the ALJ limited the claimant to sedentary work without explaining his reasoning for doing so (Tr. 20). The ALJ did note the claimant's weight when it was recorded at different places in the medical records, however, his entire analysis as to the claimant's weight at step four is as follows: "The claimant is adversely affected by obesity and he has been repeatedly directed to lose weight and undertake exercise to improve his conditioning. The claimant has not heeded that direction and has, instead, persistently gained weight." (Tr. 21).

The ALJ recited the foregoing authorities as to obesity at step three, but failed to connect them to the medical record in his findings as to the claimant's RFC at step four, or determine whether the medical evidence demonstrated any additional or cumulative effects from his obesity. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC.") [citation omitted]; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-1p on obesity applies at all steps of the evaluation sequence). This was important to do because Dr. Cooper opined that the claimant's obesity contributed to his curved spine, and Dr. Acosta suspected the claimant's lower leg pain was caused by osteoarthritis exacerbated by obesity (Tr. 203, 276). Given the impact that obesity can have on the musculoskeletal, cardiovascular, and respiratory

systems, the ALJ erred in failing to address the claimant's obesity at step four. *See* Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *5. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ) [citation omitted].

Accordingly, the decision of the Commissioner must be reversed and the case remanded for further analysis of the claimant's RFC. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 16th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**